COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E. MOLINA
SENIOR MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

February 13, 2026

Joseph L. Christensen, Esquire
Anne M. Steadman, Esquire
Levi Akkerman, Esquire
Christensen Law LLC
1201 N. Market Street, Suite 1404
Wilmington, DE 19801

Tammy L. Mercer, Esquire
Alberto E. Chávez, Esquire
Akerman, LLP
222 Delaware Avenue, Suite 1710
Wilmington, DE 19801

> Re: *Dr. Guy Kezirian v. World College of Refractive Surgery and Visual Sciences PBC*, C.A. No. 2025-1243-SEM

Dear Counsel:

This letter opinion resolves the parties' cross-motions for summary judgment. As authorized under 8 *Del. C.* § 145, the defendant's bylaws provided for advancement of fees and expenses incurred by current and former officers sued "by reason of the fact" of their positions. When the defendant sued its former chairman for alleged misconduct in that role, it agreed to advancement. But after that same conduct caused difficulties with the plaintiff's other business interests and he was sued in another forum, the defendant decried advancement as a step too far (among other defenses).

For the reasons explained herein, I disagree with the defendant and hold the plaintiff is entitled to advancement and fees on fees. I further decline the defendant's

fee shifting request. This is a letter decision, issued under 10 *Del. C.* § 350 and Court of Chancery Rule 144(g), through which the parties agreed to submit this action to me for a final decision. This letter decision is not subject to exceptions and constitutes a decision of the Court of Chancery.

## I.  BACKGROUND

On October 30, 2025, Dr. Guy Kerzirian (the "Plaintiff") initiated this action seeking to enforce his right to advancement from World College of Refractive Surgery and Visual Sciences PBC (the "Defendant").[1] The matter proceeded before me on an expedited basis and the parties teed this matter up for my decision through cross-motions for summary judgment.[2] The material facts are not in dispute.[3]

### A.  The Initial Disputes

The Defendant was incorporated as a public benefit corporation on July 2, 2021.[4] Whether the Plaintiff was authorized to act as sole incorporator or initial director remains disputed. Per the Defendant, the Plaintiff was but one member of

---

[1] Docket Item ("D.I.") 1.

[2] D.I. 21 ("Def.'s Opening Br."), 23 ("Pl.'s Opening Br.").

[3] Counsel for the Defendant emphasized at argument that the Defendant is not conceding that the Plaintiff was a properly seated director when the alleged wrongdoing occurred. Rather, counsel represented that the parties have expressly reserved that dispute for consideration at the indemnification phase. This reserved dispute is not material to my ruling herein.

[4] Def.'s Opening Br. Ex. 1.

an international team of ophthalmologists who worked together to create an independent credentialing and peer review service for surgeons specializing in the field of refractive surgery.[5] When entrusted to formalize the vision into what became the Defendant, the Plaintiff executed (in the Defendant's story) a surreptitious control scheme; acting as sole incorporator and sole director and purporting to issue himself a controlling interest in the Defendant for cents on the dollar. The Defendant contends the Plaintiff's actions only came to light in 2024, in connection with an independent audit. Shortly thereafter, on June 4, 2024, the Plaintiff resigned as the Defendant's chairman and director.[6]

This purported scheme and resignation has spurned three lawsuits. The first was brought by the Plaintiff. Around two months after his resignation, the Plaintiff sued the Defendant and its board, alleging they had defamed him in their post-separation emails to the Defendant's stockholders (the "Plaintiff's Action").[7] In the Plaintiff's Action, the Plaintiff sought damages and a declaration that his conduct was proper, and that he owns a controlling interest in the Defendant.[8] A few months later, in November 2024, the Defendant's founders and board brought a competing

---

[5] Def.'s Opening Br. Ex. 12 ¶ 17.

[6] Def.'s Opening Br. Ex. 8.

[7] Def.'s Opening Br. Ex. 11.

[8] *Id.*

action seeking mirror-image relief: a declaration that the Plaintiff's conduct was improper, and that he is not a stockholder, let alone a controlling one (the "Defendant's Action").[9]

As far as I know, the Plaintiff's Action remains pending. The Plaintiff never sought advancement for that offensive proceeding, which the parties agree is outside any advanceable realm (as discussed more below). On the other hand, the Defendant did advance the Plaintiff's fees and expenses in connection with the Defendant's Action, which has since been dismissed.[10]

## B.     The PEH Action

At issue here is the third action, filed on August 20, 2024 (the "PEH Action").[11] The PEH Action arises from the Plaintiff's indirect interest in Physician Equity Holdings, LLC ("PEH"), as the sole owner of Aligned Investment Management, LLC ("AIM"), PEH's General Manager.[12] Neither PEH nor AIM have any connection or relationship with the Defendant other than the Plaintiff, who is affiliated with each entity.

---

[9] Def.'s Opening Br. Ex. 12.

[10] Pl.'s Opening Br. Ex. N. The Defendant only agreed after several refusal letters and an action filed in this court. *See* Pl.'s Opening Br. Ex. D, G, H, J, M; *see also Dr. Guy Kezirian v. World College of Refractive Surgery and Visual Sciences PBC*, C.A. No. 2025-1032-SEM, D.I. 16 (Del. Ch. Oct. 20, 2025) (Stipulation of Dismissal).

[11] Def.'s Opening Br. Ex. 10.

[12] *See* Def.'s Opening Br. at 8–9; Ex. 10 ¶ 2.

But the Plaintiff's resignation from the Defendant and the publicity and lawsuits that followed led to concerns within and surrounding PEH. The Plaintiff allegedly admitted as much, representing in communications with PEH members that the Defendant made "very damaging" statements about him and those were having "spillover effects" on PEH.[13] Seeing those spillover effects, the preferred members of PEH decided to disassociate AIM from PEH.

Under Section 11.5 of PEH's LLC agreement, PEH has a right to call units held by a member if there is an "Adverse Triggering Event."[14] An Adverse Triggering Event includes (1) "[c]onduct that injures, harms, corrupts, demeans, defames, disparages, libels, slanders, destroys, or diminishes in any way the reputation or goodwill of" PEH and (2) "[c]omission of any act that is intended or would reasonably be expected to harm the reputation of" PEH or "which would reasonably be expected to lead to unwanted or unfavorable publicity to" PEH.[15] In response to the controversy surrounding the Plaintiff's exit from the Defendant, on July 24, 2024, PEH delivered a call notice for AIM's interests.[16] The Plaintiff, on

---

[13] *See* Def.'s Opening Br. Ex. 10 ¶ 52. *See also* Def.'s Opening Br. Ex. 8 (reflecting a communication purportedly from the Plaintiff to PEH members regarding the Defendant's allegations).

[14] Def.'s Opening Br. Ex. 7.

[15] *Id.*

[16] Def.'s Opening Br. Ex. 9.

behalf of AIM, appeared to accede to the call initially but ultimately the Plaintiff and AIM made clear they disputed the call and removal.[17]

With this challenge, on August 20, 2024, the preferred members of PEH brought the PEH Action seeking to confirm the validity of the call and resulting repurchase and for other relief, including an injunction against AIM barring it from acting as General Manager for PEH. Both the Plaintiff and AIM were named as defendants. To the best of my knowledge, the PEH Action remains pending, and AIM has filed counterclaims.[18]

### C.  Funding Attempts

The Plaintiff has attempted to fund his defense of the PEH Action through different avenues. He first sought insurance coverage from PEH's insurance policy.[19] In doing so, the Plaintiff represented that the allegations in the PEH Action "arise from AIM's rights and obligations as the General Manager and member" of PEH.[20] It appears coverage was denied.[21]

---

[17] This background is taken from the complaint in the PEH Action; it does not represent any findings of fact and merely summarizes and conveys the allegations therein for context.

[18] *See* Def.'s Opening Br. Ex. 21.

[19] Def.'s Opening Br. Ex. 13.

[20] *Id.*

[21] *See* Def.'s Opening Br. Ex. 23 (confirming "[c]o-counsel have informed us that neither Dr. Kezirian nor AIM have received any coverage for any matter, including PEH"); Def.'s Opening Br. Ex. 24 Resp. to Interrog. 1 ("Neither Plaintiff nor AIM have received any advancement, indemnification, or payment from any sources for any fees and expenses

Then, the Plaintiff sought indemnification from PEH under PEH's LLC agreement, representing that the claims related to AIM's activities as PEH member and General Manager and the Plaintiff, as an agent of AIM, was also entitled to indemnification.[22] PEH refused the indemnification demand as premature, noting that the alleged misconduct would also be outside the scope of indemnification even if the request was ripe.[23]

The Plaintiff then turned to the Defendant's insurer. On July 1, 2025, the Plaintiff demanded coverage arguing the PEH Action arose from his role and actions in connection with the Defendant.[24]  The Defendant's insurer denied the demand and, through letter dated July 22, 2025, characterized it as untimely and unfounded because the Plaintiff was not sued in an "insured capacity" but rather as the "sole owner of AIM," a former member of PEH.[25]

---

Plaintiff or AIM have incurred in connection with the Arizona Action."), Resp. to Interrog. 3 ("To the best of their information, knowledge and belief neither Plaintiff nor AIM have received a written response to the January 15, 2025 letter").

[22] Def.'s Opening Br. Ex. 14.

[23] Def.'s Opening Br. Ex. 15.

[24] Def.'s Opening Br. Ex. 16.

[25] Def.'s Opening Br. Ex. 17.

### D. The Demand

Finally, on September 22, 2025, the Plaintiff demanded advancement from the Defendant (the "Demand").[26] In the Demand, the Plaintiff argued that the PEH Action was "by reason of the fact" of his former role with the Defendant and, as such, the Defendant was required to advance his fees and expenses. Specifically, he sought advancement of $463,012.48 within 30 days.

The Plaintiff's demand was brought under the Defendant's bylaws (the "Bylaws").[27] The right to indemnification under Section 6.1 of the Bylaws extends to proceedings brought "by reason of the fact that [the Covered Person] is or was a director or officer of the" Defendant. Through Section 6.2, the Defendant granted advancement of indemnifiable expenses, to the fullest extent under Delaware law, upon receipt of an undertaking by the "Covered Person." As even greater protection, Section 6.3 of the Bylaws also flips the burden of proof onto the Defendant if a "Covered Person" makes a claim for advancement, such is not paid within 30 days, and the "Covered Person" has to sue for recovery: "In such action the corporation shall have the burden of proving that the Covered Person is not entitled to the requested indemnification or advancement of expenses under applicable law."

---

[26] Def.'s Opening Br. Ex. 18.

[27] Def.'s Opening Br. Ex. 3.

On October 22, 2025, the Defendant denied the Demand, finding it facially deficient and seeking fees and expenses outside the advanceable scope.[28]

### E.    Procedural Posture

The Plaintiff initiated this action on October 30, 2025.[29] It was assigned to me and the parties quickly agreed to an expedited case schedule, teeing this matter up for resolution on cross-motions for summary judgment.[30] The parties also agreed to submit this action to me for a final decision under 10 *Del. C.* § 350 and Court of Chancery Rule 144(g).[31] In doing so, the parties waived the right to seek judicial review of my decision at the trial court level and agreed that my final decision will constitute a decision of the Court of Chancery, appealable to the Delaware Supreme Court subject to the same procedural and substantive standards as are applicable to appeals from decisions of the Chancellor or a Vice Chancellor.

With that streamlining stipulation, the parties expeditiously briefed cross-motions for summary judgment.[32] I heard argument on January 14, 2026, and took both motions under advisement.[33]

---

[28] Def.'s Opening Br. Ex. 20.

[29] D.I. 1.

[30] D.I. 7, 10–11.

[31] D.I. 9, 11.

[32] D.I. 20, 23, 27–28.

[33] D.I. 31.

## II.    ANALYSIS

The standard of review on these cross-motions for summary judgment is clear. Where, like here, "the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[34]

The primary issue before me is entitlement: is the Plaintiff entitled to advancement of his fees and expenses incurred in the PEH Action. The question is largely one of contract interpretation and the burden, per the Bylaws, is on the Defendant to prove the Plaintiff is not so entitled.[35] The Plaintiff also seeks fees on fees, while the Defendant argues that the Plaintiff's action amounts to bad faith litigation sufficient to support shifting fees in its favor. I rule in favor of the Plaintiff.

---

[34] Ct. Ch. R. 56(h).

[35] *Underbrink v. Warrior Energy Servs. Corp.*, 2008 WL 2262316, at *7 (Del. Ch. May 30, 2008) ("Courts use the tools of contract interpretation when construing bylaw provisions relating to indemnification and advancement."); Def.'s Opening Br. Ex. 3 § 6.3 ("In any such action the corporation shall have the burden of proving that the Covered person is not entitled to the requested indemnification or advancement of expenses under applicable law.").

### A. The Plaintiff is entitled to advancement.

The Defendant makes three primary arguments against advancement. First, the Defendant argues that the PEH Action is brought against the Plaintiff personally, not in connection with his covered status, and is largely an action against, and in connection with the Plaintiff's ownership of, AIM. This, per the Defendant, renders the action outside the scope of advancement. Second, the Defendant argues that the Plaintiff is estopped from seeking advancement because of his earlier coverage requests. And third, the Defendant argues that even if the Plaintiff is entitled and not estopped from seeking advancement, the Demand is facially deficient and this suit unripe. I address, and dispose of, these arguments in turn.

#### 1. The PEH Action is "by reason of the fact" of the Plaintiff's prior role with the Defendant.

Through the Bylaws, the Defendant granted mandatory advancement when (1) a "Covered Person," (2) is defending any proceeding, and (3) provides an undertaking. Entitlement is essentially presumed, and if the Defendant denies a demand for advancement, the burden is on it to prove the "Covered Person" was not made a party to the proceeding "by reason of the fact" of their position.

There is no dispute here that the Plaintiff is a "Covered Person."[36] The Plaintiff is also defending claims against him in the PEH Action, which is a proceeding. And he has provided an undertaking. Yet the Defendant has refused advancement based on nexus. The burden, thus, falls to the Defendant to prove that the Plaintiff's involvement in the PEH Action was not "by reason of the fact" that he was an officer of the Defendant. The Defendant failed to meet that burden.

The "by reason of the fact" nexus in the Bylaws is not a creation of the Defendant; it is an express incorporation and adoption of the known meaning of that language as used in 8 *Del. C.* § 145. Under settled Delaware law, "if there is a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate capacity, those proceedings are 'by reason of the fact' . . . without regard to one's motivation for engaging in that conduct."[37] "This connection is established if the corporate powers were used or necessary for the commission of the alleged misconduct. Further, the requisite nexus can be established even if the cause of action does not specify a claim of breach of fiduciary duty owed to the corporation."[38] "The nexus is also established if the underlying claim is 'inextricably intertwined' with" official actions requiring the former officer or director "to defend

---

[36] *See supra* note 3.

[37] *In re Genelux Corp.*, 2015 WL 6390232, at *4 (Del. Ch. Oct. 22, 2015).

[38] *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007).

those actions and possibly disprove allegations that they acted improperly in those capacities."[39]

To assess whether a proceeding is "by reason of the fact," this Court must closely examine the underlying pleadings. "The Court must seek to discern the nature of the claims which [the director] is called upon to defend by reading the [complaint] as a whole and providing a reasonable interpretation of the substance of the allegations of each count."[40] If, in doing so, the claims are properly characterized as personal, not directed at the director in an official capacity, advancement should be denied.[41]

In arguing the claims in the PEH Action are personal and not "by reason of the fact," the Defendant relies primarily on *Shearin v. E.F. Hutton Group, Inc.*,[42] *Stifel Financial Corp. v. Cochran*,[43] and *Weaver v. ZeniMax Media, Inc.*[44]

---

[39] *Nielsen v. EBTH Inc.*, 2019 WL 4755865, at *8 (Del. Ch. Sept. 30, 2019), *judgment entered*, 2019 WL 7194433 (Del. Ch. Dec. 23, 2019).

[40] *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163, at *4 (Del. Ch. Jan. 30, 2004).

[41] *Pontone v. Milso Indus. Corp.*, 100 A.3d 1023, 1050 (Del. 2014).

[42] 652 A.2d 578 (Del. Ch. 1994).

[43] 809 A.2d 555 (Del. 2002).

[44] 2004 WL 243163 (Del. Ch. Jan. 30, 2004). The Defendant also points me to *Ephrat v. MedCPU, Inc.*, 2019 WL 2613281 (Del. Ch. June 26, 2019), *Charney v. Am. Apparel, Inc.*, 2015 WL 5313769 (Del. Ch. Sept. 11, 2015), and *Perik v. Student Res. Ctr., LLC*, 2024 WL 181848 (Del. Ch. Jan. 17, 2024) which I find inapposite.

The courts in *Shearin*, *Stifel*, and *Weaver* emphasized the distinction between claims arising from personal employment obligations and official duties. In *Shearin*, this court held that a former officer was not entitled to indemnification for claims relating to breach of an employment contract because those claims did not involve the officer's duties to the corporation and its shareholders.[45] Similarly in *Stifle*, the Delaware Supreme Court held that claims were properly characterized as personal and not brought against the officer in their official capacity where they arose from an employment contract and promissory note.[46] And, in *Weaver*, this Court segregated one count in the underlying litigation as outside mandatory advancement because it was expressly for personal breaches of an employment agreement.[47]

But those holdings have their limits, as this Court has repeatedly recognized. For example, Vice Chancellor Laster, in *Paolino v. Mace Security International, Inc.*, eschewed "the idea that when an employment agreement is at issue, Section 145 goes out the window. The cases instead show that Section 145 will not apply when the parties are litigating a specific and personal contractual obligation that does not involve the exercise of judgment, discretion, or decision-making authority on

---

[45] *Shearin*, 652 A.2d at 594–95.

[46] *Stifel Fin. Corp.*, 809 A.2d at 562.

[47] *Weaver*, 2004 WL 243163, at *5.

behalf of the corporation."[48] Stated another way, to avoid advancement under a contractual, personal obligation argument, "the claim for which the corporation seeks to avoid advancement must clearly involve a specific and limited contractual obligation without any nexus or causal connection to official duties."[49]

Absent such clear delineation, claims which are "inextricably intertwined" with corporate actions are still "by reason of the fact." Then-Master LeGrow found such intertwining where a CEO was required "to defend his actions as CEO, and possibly disprove the allegations that he acted improperly in that capacity[,]" even though he was sued in his capacity as a seller for breach of a merger agreement.[50] Vice Chancellor Glasscock followed suit in *Hyatt v. Al Jazeera American Holdings II, LLC* where he went claim by claim to determine which purportedly contractual claims were inextricably intertwined with and required defense of corporate actions, and, as such, were advanceable.[51]

Chancellor Bouchard's decision in *Thompson v. Orix USA Corp.* is also instructive.[52] There, the defendant's director left his position to focus his efforts on

---

[48] 985 A.2d 392, 403 (Del. Ch. 2009).

[49] *Id.* at 407.

[50] *Rizk v. Tractmanager, Inc.*, C.A. No. 9073–ML (Del. Ch. May 30, 2014) (MASTER'S FINAL REPORT).

[51] 2016 WL 1301743, at *9 (Del. Ch. Mar. 31, 2016).

[52] 2016 WL 3226933, at *1 (Del. Ch. June 3, 2016).

a new, allegedly competitive business enterprise. The defendant sued that new enterprise alleging it tortiously interfered with contracts between the defendant and the director. Although the plaintiff was not named as a defendant, the lawsuit implicated his conduct, and he demanded advancement. Under the same "by reason of the fact" lens, the Chancellor rejected arguments that the action was personal in nature; although the claims were against a separate entity and related to the former director's role with that entity, they also challenged the former director's conduct and alleged failings in his former official capacity with the defendant.[53] That was a sufficient nexus for their involvement to be "by reason of the fact," supporting advancement.

Here, the claims against the Plaintiff in the PEH Action are inextricably intertwined with the very conduct for which the Defendant conceded he was entitled to advancement in the Defendant's Action. True, the claims are contractual, tied to the rights of PEH members in PEH's LLC agreement, but the underlying conduct for which the Plaintiff will need to defend was taken in his official capacity as a former officer or director of the Defendant. To defend himself in the PEH Action he will possibly need to disprove the allegations that he acted improperly in that capacity. The Plaintiff is not, like in the cases proffered by the Defendant, being sued

---

[53] *Id.* at *4–6.

in connection with a specific and personal contractual obligation separate from his decision making while with the Defendant. The claims against him have a sufficient nexus or causal connection to his official duties; but for his official (although, per the Defendant, wrongful) conduct, he would not be facing the claims in the PEH Action.

Specifically, through the PEH Action, the PEH members seek a declaration that their call right was validly exercised because the actions of the Plaintiff injured, harmed and diminished the reputation and goodwill of PEH sufficiently to qualify as an "Adverse Triggering Event" under the PEH LLC agreement. The actions at issue are those alleged by the Defendant; that the Plaintiff engaged in a surreptitious control scheme upon founding the Defendant. Like in *Thompson*, the Plaintiff will likely need to defend the actions taken in his former role with the Defendant to defend against the findings sought in the PEH Action.

The Defendant argues against such nexus, compelling me to focus on the layers of complexity in the PEH Action; the lens of the PEH LLC Agreement, and the claims as stated in the complaint in the PEH Action. But, in doing so, I would improperly elevate the form of the pleadings over the substantive concerns raised

about the Plaintiff's conduct. Delaware advancement law compels me to take the opposite focus.[54]

In so holding, I also reject the Defendant's argument that granting advancement in this action "would create perverse incentives and unintended consequences" or risk doctrinal sprawl.[55] This holding, rather, supports the important policy underlying advancement: "that corporate officials should be able to defend not only their pocketbooks, but also their good names."[56] The Plaintiff's good name, and the appropriateness of his conduct while with the Defendant, has been challenged directly in the PEH Action. Contractual underpinnings and pleading formalities aside, the Plaintiff's defense of the PEH Action is a defense of his good name and the appropriateness of his conduct as an officer of the Defendant. Under the Bylaws, he is entitled to advancement therefor.

### 2. The Plaintiff is not estopped by his prior funding requests.

The Defendant argues that by seeking funding from other sources before asserting his right to advancement from the Defendant, the Plaintiff conceded the PEH Action was not advanceable and should be estopped from arguing otherwise. Not so.

---

[54] *See Barr v. Genesis CMG Hldgs., LLC*, 2025 WL 3720720 (Del. Ch. Dec. 23, 2025).

[55] Def.'s Opening Br. at 29.

[56] *Barrett v. Am. Country Hldgs., Inc.*, 951 A.2d 735, 744 (Del. Ch. 2008).

Nothing in the Bylaws requires the Plaintiff to file a demand for advancement first, or in lieu of, other coverage avenues, nor is there anything inconsistent about the Plaintiff seeking coverage from multiple sources. Just as "[t]he fact that another party has paid legal fees voluntarily for a covered person does not diminish the covered person's advancement right[,]" neither does the covered person's request for such alternative coverage estop a later request for advancement.[57]

I further disagree that his representations to those sources that the claims arose from or related to his connection to the entity through which he sought coverage is inconsistent; the claims in the PEH Action can (and are) both "by reason of the fact" of his former position with the Defendant and related to his ownership of AIM and position with PEH. None of those are mutually exclusive; they coexist.[58]

### 3.    The Demand is not deficient, and this action is ripe.

Finally, the Defendant argues that the Demand is facially deficient, and this action is unripe. I disagree.

---

[57] *Colaco v. Cavotec Inet US Inc.*, C.A. No. 10369-VCL, at 63:19–21 (Del. Ch. Mar. 10, 2015) (TRANSCRIPT).

[58] *Cf. Pers. Decisions, Inc. v. Bus. Planning Sys., Inc.*, 2008 WL 1932404, at *6 (Del. Ch. May 5, 2008) (holding that the defendant was estopped "when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a personal benefit.") (internal citations omitted).

Through the Demand, the Plaintiff demanded advancement of $463,012.48 within 30 days. The Defendant argues that the Plaintiff failed, however, to provide any support for the amount demanded and, as such, this action is not ripe and should be dismissed, requiring the Plaintiff to "submit an advancement demand that comports with Delaware law rather than requiring [the Defendant] to engage in a *Fitracks* procedure based on a facially deficient advancement demand."[59]

This argument is borne primarily from Vice Chancellor Laster's March 10, 2015 transcript ruling in *Colaco v. Cavotex Inet US Inc.*[60] Therein, the Vice Chancellor found persuasive a defendant's argument that the plaintiffs seeking advancement did not serve a "sufficiently specific demand" because they "fail[ed] to provide detailed support for their invoices and fail[ed] to connect particular amounts to counts being defended."[61] He explained his view that such "information needs to be provided beforehand as part of the demand so that the party who is obligated to provide advancements can evaluate the claim, determine what to dispute and what not to dispute, and generally figure out how to proceed."[62] He went on to provide his view about "what really ought to happen[:] people ought to provide the

---

[59] Def.'s Opening Br. at 34.

[60] C.A. No. 10369-VCL (Del. Ch. Mar. 10, 2015) (TRANSCRIPT).

[61] *Id.* at 65:17–22.

[62] *Id.* at 65:24–66:5.

information upfront."[63] He then explored the risks of a hard-and-fast rule and cautioned those seeking to rely on his oral ruling: "I'm not making a rule for all time here. Nobody should say, "Oh, Laster is legislating from the bench," or things like that. . . . This isn't a ruling for all time; this is an explanation of why I'm granting judgment on the pleadings in this case."[64] Finally, the Vice Chancellor concluded that the plaintiffs before him did not provide sufficient support in the underlying demand and needed to try again.

Here, I conclude the Plaintiff's demand was sufficiently detailed to ripen the dispute before me. Through the Demand, the Plaintiff identified the PEH Action as the underlying proceeding for which he seeks advancement and specified the amount of expenses incurred thus far. The Plaintiff proposed that, if the Defendant agreed "at least conceptually, to advance" than the Plaintiff would "discuss providing additional information or documents (subject to an appropriate confidentiality agreement or stipulated protective order), as necessary for [the Defendant] to evaluate the fees."[65] This provided a good faith estimate and opening for discussions between the parties. I struggle to appreciate why the Defendant needed underlying documentation to determine if the litigation was within the realm of advancement.

---

[63] *Id.* at 66:14–15.

[64] *Id.* at 68:14–24.

[65] Def.'s Opening Br. Ex. 18.

The failure to engage is one of the risks highlighted by Vice Chancellor Laster while declining to set a strict rule; that companies would fail "to respond meaningfully and . . . simply deny these things in knee-jerk fashion because they think that the people involved are bad people."[66] Rather, he advised, and I agree, "people ought to try to work these things out; ideally without having to come to court. Or if you do have to come to court, come to court on narrower issues."[67] Here, the Defendant bears equal responsibility for the parties' failure to narrow the issues brought before this Court.

Further, as recognized in the Chancellor's standard assignment letter for advancements heard by the Court's Magistrate Judges, these actions are best heard in bifurcated fashion. That permits the Court to first address the issue of entitlement to advancement and, only if the claimant is so entitled, establish a procedure for challenges to the requested fees. I do so here, ruling that the Plaintiff is entitled to advancement, without passing on the reasonableness of the amount demanded.

Now that entitlement is resolved, a *Fitracks* process will follow.[68] Going into that process, I caution the Plaintiff on allocation. AIM is not a "Covered Person" entitled to advancement. To the extent the Plaintiff is implicitly seeking advancement for AIM, which is also a defendant in the PEH Action, this ruling

---

[66] *Colaco*, C.A. No. 10369-VCL, at 66:16–18.

[67] *Id.* at 66:19–22.

[68] *Danenberg v. Fitracks, Inc.*, 58 A.3d 991 (Del. Ch. 2012).

rejects as much. Going forward, the Plaintiff is reminded: "When counsel represents both covered and non-covered persons, counsel must allocate fees and expenses depending on whether the activity benefitted the party holding the advancement right."[69] The Plaintiff is entitled to advancement of expenses incurred in defending his conduct in connection with the Defendant as and to the extent that conduct is challenged and implicated in the PEH Action; the overall litigation expenses of the co-defendants must be proportioned appropriately.[70]

**B.      The Plaintiff is entitled to fees on fees.**

The Plaintiff also seeks fees on fees. "This Court awards fees on fees when a plaintiff successfully shows an entitlement to advancement that wrongfully was withheld by the defendant corporation."[71] Here, the Bylaws guaranteed the Plaintiff broad advancement, which the Defendant wrongfully withheld. The Defendant makes the same ripeness arguments as above to avoid fees-on-fees; I find them unpersuasive. The Plaintiff is entitled to fees on fees incurred in connection with this proceeding, and for interest thereon under Delaware law.

---

[69] *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *8 (Del. Ch. Feb. 13, 2018).

[70] *See Kerbs v. Bioness Inc.*, 2022 WL 3347993, at *3–4 (Del. Ch. Aug. 15, 2022). *See also Thompson*, 2016 WL 3226933, at *6.

[71] *In re Genelux Corp.*, 2015 WL 6390232, at *6.

C. **The Defendant has not demonstrated bad faith sufficient to overcome the American Rule**

Finally, the Defendant moves for fee shifting under the bad faith exception to the American Rule. Far from bad faith, I find the Plaintiff's claims meritorious and deny the Defendant's request for fee shifting in its favor.[72]

## III. CONCLUSION

For the foregoing reasons, the Plaintiff is entitled to advancement under the Bylaws and is awarded fees on fees. The Plaintiff's motion for summary judgment is granted and the Defendant's motion is denied. The parties shall meet and confer promptly on an implementing order and procedures consistent with *Danenberg v. Fitracks, Inc.*[73]

---

[72] In its bad faith argument, the Defendant decried the Plaintiff's failure to produce insurance communications despite the Plaintiff's confirmation that no such records exist. *See* Def.'s Opening Br. Ex. 24 Resp. to Interrog. 1, 3. Failing to produce documents that do not exist cannot support a bad faith finding. Likewise, I struggle to see how the Plaintiff's efforts to secure alternative coverage were wrongful or indicative of bad faith. The Defendant conceded at argument that its bad faith argument was circumstantial, borne from the parties' litigious relationship. But, considering the circumstances reflected in the limited record before me, I cannot reasonably infer glaringly egregious conduct by the Plaintiff.

[73] 58 A.3d 991.